# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6441 | **DATE** | February 9, 2001 |
| **CASE TITLE** | | Hernandez v. City of Chicago | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Village of Stickney's and Officer Wallick's motion to dismiss all claims against them [46-1] is granted. The City of Chicago's motion to dismiss Count IV [29-1] is denied. The Sheriff of Cook County's motion to dismiss the complaint [48-1] is granted in part and denied in part. The § 1983 claim against the Sheriff in his individual capacity is dismissed. The § 1985 conspiracy claims are dismissed as against all defendants. The state law assault and battery claims are dismissed as against all defendants. The Sheriff's motion to strike plaintiff's exhibits and portions of plaintiff's response [57-1] is denied as moot. Status conference is set for Tuesday, February 27, 2001 at 9:30 a.m. ENTER MEMORANDUM OPINION.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 08 2001 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| kam | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EMILIANO HERNANDEZ, | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | No. 99 C 6441 |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, CHICAGO POLICE OFFICERS JEFFREY CARTER, ANTHONY PONTRELLI, CHARLES RUZEVICH and THOMAS BEAZLEY, and unknown officers and agents; VILLAGE OF STICKNEY, a municipal corporation, VILLAGE OF STICKNEY POLICE OFFICERS JEFF WALLICK, and unknown officers and agents; MICHAEL SHEAHAN, Cook County Sheriff, and unknown officers and agents; in their individual and official capacities | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
**FEB 0 9 2001**

### MEMORANDUM OPINION

Before the court are three motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: the City of Chicago moves to dismiss Count IV of plaintiff's amended complaint; the Village of Stickney and Officer Wallick move to dismiss Count I as it pertains to Officer Wallick and Count IV as to the Village; and Michael Sheahan, the Sheriff of Cook County, moves to dismiss

Counts I-IV. For the reasons stated herein the motions are granted in part and denied in part.

## BACKGROUND

The following facts are drawn from Hernandez's First Amended Complaint and are taken as true for the purposes of these motions. On June 9, 1999, at around 6:00 PM, plaintiff, Emiliano Hernandez, was stopped by City of Chicago police officers Jeffrey Carter and Anthony Pontrelli for an alleged stop sign violation. Plaintiff was then arrested for two traffic violations: driving with a suspended license and failure to provide proof of automobile insurance. He was taken into custody and processed for these tickets under his true name and address: Emiliano Hernandez; 4847 S. Wood Street, Chicago, Illinois.

In addition to the traffic violations, Carter and Pontrelli placed a "hold" on the plaintiff because of an outstanding arrest warrant from February 3, 1995 for one "Enrique Hernandez." Enrique Hernandez had violated his bond conditions after being arrested for driving under the influence and leaving the scene of an accident by two Village of Stickney Officers, L. Cones and Jeff Wallick.

The arrest warrant was for "Enrique Hernandez, 2652 S. St. Louis, Chicago, IL, Male, 175 lbs., 5'3", Black Hair, DOB 7/12/53." In addition to having the same last name, plaintiff has the same

birthday as Enrique Hernandez. He is 5'5", weighs 150 lbs., and has brown hair.

Plaintiff alleges that he immediately informed unknown Chicago police officers that he was not Enrique Hernandez. He told them that he had recently been stopped for other motor vehicle violations and on those occasions had not been held on the Enrique Hernandez warrant. Plaintiff explained that his family lived nearby and could provide documentation showing that he was not Enrique Hernandez. At around 8:00 PM on June 9, 1999, plaintiff was booked and processed under the name "Enrique Hernandez."

Also at around 8:00 PM, plaintiff's family arrived at the Chicago district police station with plaintiff's passport, social security papers and permanent resident alien card. All of the documents identified plaintiff as Emiliano Hernandez. The officers at the station told the family members to come back later and continued to process plaintiff as Enrique Hernandez, even though the ticket initially issued was to Emiliano Hernandez. Plaintiff's family members returned at around midnight with further documentation, but their protests were again ignored. Plaintiff was held that night in the lock-up at the traffic court.

On the morning of June 10, 1999, plaintiff was brought to traffic court, where he pled guilty to the two traffic charges and

was sentenced to time served. However, because of the "hold" plaintiff was ordered held in custody to insure his appearance on the Village of Stickney arrest warrant at the Bridgeview Courthouse the following day. He was taken to Cook County Jail and subjected to "intake" procedures: unknown officers or agents of the Cook County Sheriff's Department photographed, searched, printed, and inoculated plaintiff under the name Enrique Hernandez.

On June 11, 1999, plaintiff was transported to the Bridgeview Courthouse on Enrique Hernandez's arrest warrant. Because the Stickney police officers, Cones and Wallick, did not appear, the matter was continued until July 1, 1999. Plaintiff was returned to Cook County Jail. On June 24, 1999, plaintiff's relatives posted bond, and he was released.

On July 1, 1999, plaintiff returned to the Bridgeview Courthouse. The Stickney police officers appeared and failed to identify the plaintiff as Enrique Hernandez. An order was entered stating that plaintiff, Emiliano Hernandez, was not the proper defendant in that case.

This case, originally filed in state court, was removed to this court on September 30, 1999 on the basis of federal question jurisdiction. Count I of Plaintiff's First Amended Complaint alleges violations of 28 U.S.C. §§ 1983 and 1985 by each of the

following defendants, in their individual and official capacities: Chicago Police Officers Carter, Pontrelli, Ruzevich, Beazley and unknown officers and agents of the Chicago Police Department; Sheriff Sheahan and unknown officers and agents of the Cook County Sheriff's Department;[1] and Stickney Officer Wallick and unknown officers and agents of the Village of Stickney. Count II alleges a state law assault and battery claim against the Chicago police officers and against the Sheriff of Cook County, Michael Sheahan, in his individual capacity, and the unnamed officers of the Sheriff's Department. In Count III, plaintiff charges each of the Chicago police officers, Sheriff Sheahan, and unknown Sheriff's Department officers with false arrest and false imprisonment. Count IV alleges a <u>Monell</u> policy claim against the City of Chicago, the Village of Stickney, and Sheriff Sheahan. Before the court now are the City of Chicago's motion to dismiss Count IV of the Complaint; the Village of Stickney's and Officer Wallick's motion to dismiss Count I as it pertains to Officer Wallick, and Count IV, as it pertains to the Village; and Sheriff Sheahan's motion to dismiss Counts I - IV.

---

[1] The Sheriff's Department includes the Cook County Department of Corrections, the Cook County Department of Courtroom Services, and the Cook County Sheriff's Police Department.

## DISCUSSION

I. **City of Chicago's Motion to Dismiss the Monell Claim Against the City**

To allege that a municipal policy has violated his civil rights under § 1983, Hernandez must allege one of the following: (1) the City had an express policy that, when enforced, caused a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). Hernandez relies upon the second of these alternatives.

Hernandez alleges that he suffered violations of his Fourth and Fourteenth Amendment rights, and he argues that the City's consistent pattern of failing to verify or check whether an arrestee is the individual described in an arrest warrant represents an unconstitutional policy. Plaintiff's Fourth Amendment claims focus on his illegal arrest. The Fourteenth Amendment claims pertain to his unlawful 15-day detention by the Chicago Police Department and the Cook County Sheriff's Department. The City argues that Count IV should be dismissed for two reasons:

(1) plaintiff cannot establish that he has been deprived of a constitutional right; and, (2) plaintiff's policy claim alleges only an isolated incident of unconstitutional conduct.

## A. The Underlying Constitutional Violations

### i. The Fourth Amendment

For purposes of the Fourth Amendment claim we must focus on the reasonableness of plaintiff's arrest by the Chicago police. See, e.g., Hill v. California, 401 U.S. 797 (1971). In this case, as the City notes, plaintiff was initially arrested on traffic violations on June 10, 1999, which he plead guilty to in traffic court on June 11, 1999. Plaintiff does not allege facts suggesting that the initial arrest was unreasonable. Rather, he complains that there was no probable cause to place a "hold" on him for the outstanding warrant for Enrique Hernandez. Because Hernandez was held pursuant to the warrant, we must analyze whether there was probable cause to do so.[2]

---

[2]The City argues that because Hernandez was initially arrested on traffic violations that he ultimately pled guilty to, there can be no question that there was probable cause to "hold" him. However, this assumes that defendants are regularly held overnight on traffic violations, which has not been established. Further, when plaintiff appeared on the morning of June 11, 1999 in traffic court, the judge resolved the traffic violations, yet plaintiff was not allowed to go. Instead, he was detained to ensure his appearance at the Bridgeview Courthouse the next day on the Enrique Hernandez warrant. Plaintiff alleges that the traffic court judge did not conduct a probable cause inquiry but rather relied on the Chicago Police officers' determination of cause. Thus, we reject the City's argument that the traffic violations constituted probable cause to hold plaintiff.

The U.S. Supreme Court examined the standard by which we measure the reasonableness of a mistaken arrest in <u>Hill v. California</u>, 401 U.S. 797 (1971). In that case, police officers had probable cause to arrest Hill, but when they arrived at his apartment, they encountered Miller, who fit Hill's description. The officers mistakenly arrested Miller. The Court held that Miller's Fourth Amendment rights were not violated and stated that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." <u>Id.</u> at 804.

The Seventh Circuit has also addressed the arrest of a person under the mistaken belief that he or she is the person named in an otherwise valid warrant. <u>See</u> <u>Patton v. Przybylski</u>, 822 F.2d 697, 700 (7th Cir.1987); <u>Brown v. Patterson</u>, 823 F.2d 167, 169 (7th Cir. 1987); <u>Johnson v. Miller</u>, 680 F.2d 39, 41 (7th Cir. 1982). These cases hold that the Fourth Amendment is not violated by a mistaken arrest where the arresting officer acted "reasonably" under the circumstances. In all three cases, the Seventh Circuit held that the arrest of the wrong person with the same name as the person named in the warrant was reasonable.

The City relies in particular upon <u>Brown</u>, where the Seventh

---

Circuit held that Anthony Brown's Fourth Amendment rights were not violated when the officers arrested Brown on a warrant for Anthony Mosely, alias "Anthony Brown." 823 F.2d at 169. Brown was a black male, who lived in the same area, and who had a birth date only 12 days apart from that of Mosely. Id. The Court held that the officers acted reasonably under the Fourth Amendment and noted that it would have been "imprudent" under such circumstances for the officers not to have taken Brown into custody for further investigation. Id.

However, as one of our colleagues noted in Johnson v. City of Chicago, 711 F. Supp. 1465, 1468 (N.D. Ill., 1989, Moran, J.), "it would be a different matter if the police officers discovered information which revealed their mistake and then failed to promptly release [plaintiff] from custody. Under such circumstances an extension of the arrest could violate the Fourth Amendment." See also, Bevier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.").

Here, not only did plaintiff protest that he was not Enrique Hernandez, but, according to the complaint, plaintiff's family members came to the station with copies of his passport, social security card and resident alien card. Arguably, the officers

knew, or should have known, that there was a lack of probable cause for the "hold." Accordingly, we find that Hernandez has alleged sufficient facts to establish a deprivation of his Fourth Amendment rights in regard to his detention on the Stickney warrant.

### ii. The Fourteenth Amendment

The next question is whether Hernandez has sufficiently pled facts that would establish a violation of the Fourteenth Amendment in that he was detained for 15 days without due process of law. In Baker v. McCollan, 433 U.S. 137, 141, 145 (1979), the U.S. Supreme Court held that there was no constitutional violation where plaintiff was mistakenly arrested pursuant to a valid warrant and held for three days over a holiday weekend, but explained:

> Obviously, one in [plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. . . . We may even assume, arguendo, that depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of the law.

Id. at 144-45. In interpreting these statements, the Seventh Circuit has indicated that jailing a person for a period of time over his vigorous protest that he is the wrong person, without investigating or bringing him before a magistrate, can raise

"serious constitutional questions under the due process clause if the arrest was proper and the complaint is that the arrested person, having been deprived of his liberty by being incarcerated, was denied due process." Pryzbylski, 822 F.2d 697, 700-701; see also Johnson, 711 F. Supp. at 1470 (finding that a "prolonged detention, coupled with failure to investigate, may suggest a deprivation of liberty without due process.") In Pryzbylski, the court seemed to suggest that a two day weekday detention may amount to a constitutional deprivation under the Fourth and Fourteenth Amendments. Pryzbylski, 822 F.2d at 697; see also, Patton, 822 F.2d at 700 (one week sufficient to state a due process claim); Griffin v. Sheahan, No. 98 C 2398, 1999 WL 342400 (N.D. Ill.)(five days sufficient to state a due process claim); Johnson, 711 F. Supp. at 1470 (six days sufficient to state a due process claim).

Plaintiff's allegations of a 15-day detention in the face of repeated protests of mistaken identity clearly meet the pleading threshold established by these cases. Furthermore, plaintiff was not released because defendants discovered their error but rather was bonded out by his relatives. Finally, plaintiff's detention is coupled with allegations of a custom of failing to investigate claims of mistaken identity. Accordingly, we find plaintiff has sufficiently stated a due process claim under the Fourteenth

Amendment.

### B. **Plaintiff Has Sufficiently Alleged a Policy or Practice**

To state a cause of action against the City under § 1983, Hernandez must allege that a constitutional deprivation occurred as the result of a City policy or custom. <u>Monell v. Department of Social Services,</u> 436 U.S. 658, 694 (1978). As the Seventh Circuit recently noted in <u>McCormick v. City of Chicago</u>, 230 F.3d 319, 323-324 (7th Cir. 2000):

> The Supreme Court has made it very clear that federal courts must not apply heightened pleading standard in civil rights cases alleging § 1983 municipal liability. <u>See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 164 (1993). To survive a motion to dismiss, "a pleading must only contain enough to 'allow the court and the defendant to understand the gravamen of the plaintiff's complaint,'" <u>Payton v. Rush Presbyterian-St. Luke's Med. Ctr.</u>, 184 F.3d 623, 625 (7th Cir. 1999) (citations omitted). The task for the court in these cases then is to determine exactly what is "enough."

As noted, plaintiff has alleged that the City has a widespread practice of ignoring protests of mistaken identity that, although not embodied in written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. <u>See St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988)(policy need not be expressly authorized, but it may be "'so permanent and well settled as to constitute a 'custom and usage'

with the force of law.'")(citations omitted). Here, we find that plaintiff's allegations are sufficient. The fact that plaintiff spent 15 days in detention despite his protests that he was not Enrique Hernandez is consistent with his allegation that the City of Chicago had a policy (of not investigating the propriety of an arrest despite an individual's claim of mistaken identity) that infringed both his Fourth and Fourteenth Amendment rights.

## II. Defendant Sheriff of Cook County's Motion to Dismiss All Counts

Plaintiff charges Sheriff Michael Sheahan and unnamed officers of the Cook County Sheriff's Department with violating 28 U.S.C. §§ 1983 and 1985 by denying plaintiff his constitutional rights under the Fourth and Fourteenth amendments (Count I). Plaintiff also alleges a state law assault and battery claim (Count II) and a false arrest and false imprisonment claim (Count III) against the Sheriff and unnamed officers in their individual and official capacities. Plaintiff's Count IV, discussed above, alleges a Monell policy claim. The Sheriff argues that all counts should be dismissed.

### A. Plaintiff's Policy Claim Against the Sheriff

As with plaintiff's policy claim against the City, we will first discuss the underlying constitutional violation and then

examine whether plaintiff has sufficiently alleged an unconstitutional policy or practice. The Sheriff, however, raises three related issues that the City did not: first, that the claim against the Sheriff in his individual capacity must be dismissed; second, that the Sheriff is entitled to a defense of qualified immunity; and finally, that the Sheriff is entitled to immunity under the Eleventh Amendment. We will discuss each contention in turn.

### i. The Underlying Constitutional Violations

The Sheriff argues that he cannot be liable under § 1983 for a violation of plaintiff's Fourth Amendment rights because he was not responsible for plaintiff's arrest. The Sheriff further contends that he cannot be liable for a Fourteenth Amendment violation because the plaintiff was taken into the custody of the Cook County Jail and processed under the name of Enrique Hernandez pursuant to a court order. We disagree.

As a general matter, the Seventh Circuit has held that the Fourth Amendment "governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." Armstrong v. Squadrito, 152 F.3d 564, 569 (7th

Cir. 1998). The Sheriff thus argues that he cannot be liable for a Fourth Amendment violation. But while the Sheriff argues that he and his officers were acting pursuant to a judge's determination of probable cause, Hernandez alleges that neither the Chicago Police officers, nor the traffic court judge, nor the Bridgeview judge made a probable cause determination. In <u>Griffin v. Sheahan</u>, No. 98 C 2398, 1999 WL 417342 (N.D. Ill.)(Schenkier, Magistrate J.), the district court noted with respect to virtually the same argument:

> Reading those cases[3] together leads the Court to reject the proposition urged by the County defendants: that any appearance before a judge automatically, as a matter of law, absolves the custodian from any obligation to conduct even a minimal investigation into identity that would prevent a prolonged detention. The Court believes that under the foregoing authorities, it cannot correctly assess the significance (or lack of significance) of the appearance before the judge in a vacuum. The Court must know what happened before the judge, and when it happened in the detention process, to determine the relevance of that proceeding, and what effect (if any) it has on whether the custodian can be held liable for prolonged detention based on mistaken identity. **Those are matters to be sorted through the discovery process, not on a motion to dismiss.** (Emphasis added).

The Seventh Circuit addressed a similar issue in <u>Luck v. Rovenstine</u>, 168 F.3d 323 (7th Cir. 1999). In <u>Luck</u>, the Sheriff argued that he was not responsible for the period of confinement

---

[3] "Those cases" are Seventh Circuit cases discussing mistaken arrest: <u>Patton v. Przybylski</u>, 822 F.2d 697, 700 (7th Cir.1987); <u>Brown v. Patterson</u>, 823 F.2d 167, 169 (7th Cir. 1987); <u>Johnson v. Miller</u>, 680 F.2d 39, 41 (7th Cir. 1982).

between a warrantless arrest and a judicial determination of probable cause. The court found "unconvincing" the Sheriff's "attempt to shrug off his federal constitutional responsibilities" and stated that in the final analysis, "the sheriff is the custodian of the persons incarcerated in the jail, and as such, it is he who is answerable for the legality of their custody." 168 F.3d at 326.

Viewing the facts alleged in the complaint in the light most favorable to plaintiff, we find that he has alleged a Fourth Amendment violation, for which, under the relevant case law, the Sheriff and unnamed officers could be liable. And, the Sheriff certainly may be liable for a violation of Hernandez's due process rights for the same reasons discussed above in Section I with respect to the Chicago Police Department: because a "prolonged detention, coupled with failure to investigate, may suggest a deprivation of liberty without due process." Johnson, 711 F. Supp. 1465, 1470.

### ii. An Unconstitutional Policy or Practice

For the reasons discussed in Section I, the Sheriff may potentially be liable on a Monell claim for perpetuating a policy that led to Hernandez's prolonged detention. Hernandez alleges that the Cook County Jail officials acted with deliberate

indifference to his protests of mistaken identity. He alleges that the jail's intake procedures were insufficient in light of his continued protests and the documentation demonstrating that he was not Enrique Hernandez.

In Squadrito, the Seventh Circuit noted that "jailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of their liberty." 152 F.3d at 579. See also, Gordon v. Sheahan, No. 98 C 2120, 1998 WL 801992 (N.D. Ill.)(detention pursuant to invalid warrant that had not been taken out of the system was based on a de facto policy, not a random and unauthorized act); Harris v. Sheahan, No. 98 C. 293, 1999 WL 66574 (N.D. Ill.)(plaintiff, who had same name as police suspect, alleged viable claim where police mistakenly arrested her and refused to verify her identity).

The Sheriff argues that he was not responsible for any alleged error that led to plaintiff's detention and that he was merely acting on the basis of errors made by the Chicago Police Department, the traffic court judge, or the Bridgeview judge. But failing to correct another's error may be error in itself. The case law makes clear that the Sheriff has a duty to respond to and investigate a detainee's continued protests. Accordingly, we deny

the Sheriff's motion to dismiss the § 1983 claim in Count I and the policy claim alleged in Count IV.

### iii. Individual Capacity Claim

The Sheriff also moves to dismiss the claims against him in his individual capacity. Individual capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25 (1991) (citations omitted). To establish personal liability in a § 1983 action, the plaintiff must show that the officer "caused the deprivation of a federal right." Id. To hold Sheriff Sheahan liable in his individual capacity, plaintiff must show that the alleged constitutional violations occurred at the Sheriff's direction or with his knowledge and consent. Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1992). The Sheriff "must know about the conduct and facilitate, approve it, condone it, or turn a blind eye . . .". Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988).

Plaintiff alleges that he was held for 15 days on a warrant that did not pertain to him and subjected to physical and emotional pain notwithstanding his protests of mistaken identity. However, he has not implicated the Sheriff personally in these charges. Plaintiff pleads a widespread and permanent practice of ignoring

the problem of potential misidentification at Cook County Jail. But the assertion of a policy or practice, or of inaction in a general sense "does not add up to the kind of personal involvement we require for individual liability in § 1983 cases." Luck, 168 F.3d at 327 (plaintiff's concession that he never had direct contact with the Sheriff and that the Sheriff lacked actual knowledge of plaintiff's wrongful detention was enough to defeat his individual capacity claim). Plaintiff's general and conclusory allegations are insufficient to support his claims against the Sheriff in his individual capacity.[4/]

### iv. Eleventh Amendment Immunity

It is well established that official capacity suits against state officials are deemed to be suits against the State, and are therefore barred by the Eleventh Amendment. Will v. Mich. Dept. of State Police, 491 U.S. 58, 70-71 (1989). Under Illinois law, however, the Sheriff of Cook County is a county official, rather than a state official. See Ill. Const. art. VII, S 4(c). As such, he is generally not entitled to Eleventh Amendment

---

[4/]In light of this finding, there is no need to discuss whether the Sheriff would be entitled to qualified immunity from suit. See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985) (defense of qualified immunity is applicable only in a personal capacity suit); Feldman v. Bahn, 12 F.3d 730, 732 (7th Cir. 1993) (individuals sued in their official capacity do not need qualified immunity and are not entitled to claim it).

protection. See Scott v. O'Grady, 975 F.2d 366, 371 (7th Cir.1992). A county official can, however, be considered a state official with Eleventh Amendment immunity if he or she "acts as an arm of the Illinois state judicial system in executing Writs of Assistance and other state court orders." Id.

Sheriff Sheahan maintains that he is entitled to Eleventh Amendment immunity in this case. In Scott, the Seventh Circuit held that where the Sheriff acted to evict tenants from a building that was subject to a foreclosure action, he was deemed a state official because he was carrying out a purely ministerial duty. However, courts have construed Scott narrowly. In Jackson v. Doria, 851 F. Supp. 288, 290 (N.D. Ill. 1994), a mistaken identity case, the district court noted that the Sheriff's argument for Eleventh Amendment immunity "has been repeatedly rejected by judges in this district." (collecting cases). In Jackson, the facts were slightly different from the present case: Sharon Jackson was arrested multiple times on a warrant for "Sherry Jackson" due to the Sheriff's failure to correct the warrant information in the system. Id. at 288. The district court held that the Sheriff directly participated in the violation of Jackson's civil rights, thus the action was not merely a ministerial state action. The Sheriff seeks to distinguish Jackson by arguing here that he was

only acting pursuant to a court order - closer to the "statutory non-discretionary function" described in <u>Scott</u>, 975 F.2d at 371. But we find that the policy of willful indifference that plaintiff alleges is much closer to the kind of direct, discretionary action described in <u>Jackson</u>. Accordingly, we reject Sheriff Sheahan's defense of Eleventh Amendment Immunity.

### B. **Common Law False Arrest and False Imprisonment Claims**

The Sheriff has also moved to dismiss plaintiff's pendent state law claims for false arrest and false imprisonment. "False arrest is an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." <u>Thorner v. City of Harvey</u>, No.97 C 4573, 1998 WL 355526 (N.D.Ill.)(quoting <u>Meerbrey v. Marshall Field and Co.</u>, 564 N.E.2d 1222, 1231 (1990). The elements of a false arrest or false imprisonment claim under Illinois law are "that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." <u>Id.</u> Given that plaintiff was jailed for 15 days on mistaken identity, we find that plaintiff has sufficiently alleged facts to support these claims.

### C. **Assault and Battery Claim**

We do not find, however, that plaintiff has sufficiently

alleged an assault and battery claim. The complaint states simply
that defendants "assaulted and battered the plaintiff" and that
"the plaintiff suffered injuries." Cmplt. at ¶¶101-02. In his
brief, plaintiff argues that by giving defendants the dates of
incarceration, he is putting them on "notice" of his allegations.
Plf.'s Resp. at 16. But defendants cannot be expected to
adequately defend against this charge given plaintiff's bare and
conclusory allegations. Plaintiff has not satisfied the
requirements of notice pleading.⁵/

### D. **Section 1985 Conspiracy Claim**

Nor has plaintiff adequately alleged a § 1985(3) conspiracy
claim. Plaintiff states in his complaint:

> During all relevant times from the time that the
> plaintiff was stopped and during his 15 days of
> incarceration, the defendants, acting jointly, assisted
> and supported each other to perform the aforementioned
> acts and supplied the authority of their office to each
> other. Cmplt. at ¶ 98.

> . . . . .

The defendants understood and agreed by their separate

---

⁵/ Plaintiff asserts assault and battery claims in substantially the same terms
against the City of Chicago and the individual Chicago police officers. Although
the City does not address the issue in its motion to dismiss, it is equally
evident that plaintiff has not stated a claim against these defendants. Thus,
we dismiss sua sponte the assault and battery claims against the City and the
Chicago police officer. Rosser v. Chrysler Corp., 864 F.2d 1229, 1304 (1988)
(approving the practice of rendering judgment as to non-moving defendants when
they are similarly situated to the moving defendants or where the claims against
all the defendants are integrally related).

and coordinated overt acts or omissions to obstruct the process of justice by intending to deny plaintiff his constitutional right of equal protection to the laws. Cmplt. at ¶ 127.

. . . . .

The pattern of behavior, agreements, policies and customs of the defendants evidence a deliberate indifference by the policymakers of defendants. Such deliberate indifference violated the plaintiff's rights under the United States Constitution, the Illinois Constitution, 42 U.S.C. §§ 1983, 1985(2). Cmplt. at ¶ 129.

A claim for conspiracy under 28 U.S.C. § 1985(3) requires: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy;(4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. United Brotherhood of Carpenters and Joiners, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983). Furthermore, Section 1985(3) requires not only an allegation of a conspiracy but also "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." See, Bowman v. City of Franklin, 980 F.2d 1104,1108 (7th Cir. 1993)(citations omitted).

Plaintiff does not allege in his complaint that the defendants conspired against him because of his race or because he is a member

of a class that shares such common characteristics as ethnicity, sex, or religion. See <u>Wilson v. Giesen</u>, 956 F.2d 738, 744 (7th Cir. 1992). Accordingly, we dismiss plaintiff's § 1985(3) conspiracy claim.[6]

### III. Village of Stickney's and Officer Jeff Wallick's Motion to Dismiss

Plaintiff also charges the Village of Stickney and Officer Wallick with § 1983 violations. Plaintiff alleges that the arrest warrant for Enrique Hernandez, issued by these defendants, was deficient. He argues that "the only reason why a 'hold' continued to exist on plaintiff was because of the deficient 1995 warrant." <u>Plf. Resp.</u> at 4. However, we agree with defendants' argument with respect to these charges: plaintiff cannot establish a causal link between the actions of the Village of Stickney and Officer Wallick and the mistaken detention of plaintiff by the Chicago Police Department and the Sheriff of Cook County.

In <u>Martinez v. State of California</u>, 444 U.S. 277 (1980), plaintiff's survivors sued the state parole board under § 1983 for it's role in the release of an inmate who ultimately murdered Martinez. The court concluded that state parole officers were not

---

[6] For the reasons discussed with respect to the assault and battery claims we dismiss <u>sua sponte</u> plaintiff's § 1985(3) conspiracy claim as against the City of Chicago and the individual Chicago policy officers. <u>Rosser</u>, 864 F.2d at 1304.

liable for the murder committed by a released prisoner because plaintiff's death was "too remote a consequence of the parole officer's actions to hold them responsible under federal civil rights law." 444 U.S. at 285. The Court's decision in Martinez was fairly narrow, but in Johnson v. City of Chicago, 856 F.2d 985, 933 (7th Cir. 1988), the Seventh Circuit held that principles of legal causation are equally applicable to both constitutional and common law torts. In Johnson, the actions of Chicago police officers in suppressing evidence and falsifying reports were found to be directly related to an innocent defendant's prison stay.

Here, however, we see no proximate connection between the actions of the Village of Stickney or Officer Wallick in obtaining the warrant for "Enrique Hernandez" and the subsequent mistaken detention of Emiliano Hernandez. Plaintiff argues that defendants should have actively followed up on the status of the warrant they issued, but he does not explain how the Village or Officer Wallick could have anticipated that the wrong person would be arrested and held on the warrant, particularly since the warrant had the correct name. The warrant was for: "Enrique Hernandez, 2652 S. St. Louis, Chicago, IL, Male, 175 lbs., 5'3", Black Hair, DOB 7/12/53." Accordingly, we dismiss plaintiff's claims against the Village of Stickney and Officer Wallick.

**CONCLUSION**

For the foregoing reasons, the Village of Stickney's and Officer Wallick's motion to dismiss all claims against them is granted. The Village of Stickney and Officer Wallick are dismissed from the case. The City of Chicago's motion to dismiss Count IV is denied. The Sheriff of Cook County's motion to dismiss the complaint is granted in part and denied in part. The § 1983 claim against the Sheriff in his individual capacity is dismissed. The § 1985 conspiracy claims are dismissed as against all defendants. The state law assault and battery claims are dismissed as against all defendants. What remains are the § 1983 claims against the individual defendants (Count I), the § 1983 claims against the municipalities (Count IV) and the state law false arrest and imprisonment claims (Count III).[2]

A status conference is set for Tuesday, February 27, 2001 at 9:30 a.m.

---

[2]We deny as moot the Sheriff's motion to strike plaintiff's exhibits and portions of plaintiff's response.

DATE:      February 8, 2001

ENTER:     _____
           John F. Grady, United States District Judge